IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED FINANCIAL CASUALTY COMPANY,

    Plaintiff,

v.

                    Case No. 2:22-cv-00737-MLG-GBW

JEREMIAH GABRIEL ROCHA,
HECTOR ROCHA, individually and d/b/a
ROCHA'S SEPTIC SERVICE, OSCAR RODRIGUEZ,
GENESIS ACEVES-LOPEZ, individually and as
next friend of A.R., a minor, and
JOLEEN K. YOUNGERS, as Personal Representative
of the wrongful death estate of JAZMIN RODRIGUEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' Oscar Rodriguez, Genesis Aceves-Lopez, individually and as next friend of A.R., a minor, and Joleen K. Youngers', as Personal Representative of the wrongful death estate of Jazmin Rodriguez, (collectively referred to hereafter as the "Rodriguez Defendants") Motion to Dismiss, or Alternatively, Abstain from Exercising Jurisdiction. Doc. 11. Having reviewed the Parties' filings, relevant legal authority, and having heard oral argument presented at a hearing on this matter, the Court will grant the motion.

### BACKGROUND

The facts of this case are tragic. On the morning of September 29, 2020, Genesis Aceves-Lopez, A.R., and Jazmin Rodriguez were in a vehicle traveling eastbound on Interstate 10 in Dona Ana County, New Mexico. Docs. 1-2 at 3-4; 17 at 1-2. At the same time, Jeremiah Rocha was operating a commercial vehicle in the scope of his employment with Rocha's Septic Service. Doc.

1

1-2 at 4. He was also traveling eastbound on Interstate 10 and was situated behind Aceves-Lopez, A.R., and Rodriguez as they began to exit the roadway. Doc. 20 at 11.[1] For reasons that are apparently in dispute,[2] Jeremiah Rocha was unable to timely bring his vehicle to a stop and rear-ended Aceves-Lopez, A.R. and Rodriguez. Jazmin Rodriguez was killed in the collision. Doc. 20 at 12. The other passengers suffered significant physical injuries. *Id.*

Aceves-Lopez filed suit in state court for her injuries, and she also asserted damages on behalf of her son A.R. Youngers, who is the court appointed personal representative of Jazmin Rodriguez's wrongful death estate, seeks damages flowing from Jazmin Rodriguez's suffering and loss of life. *Id.* at 20. The initial pleading named Jeremiah and Gabriel Rocha as defendants along with Gabriel Rocha's proprietary business, Rocha's Septic Service. Doc. 1-2 at 2. The complaint asserts various claims for damages arising from the collision, including wrongful death and personal injury damages. *See generally id*. The original complaint did not name United Financial Casualty Company ("UFCC"), who is the commercial vehicle insurance carrier for Rocha's Septic Service. Doc. 20 at 10 ¶ 9.

Approximately ten months after the underlying state court litigation began, UFCC initiated these proceedings for declaratory injunctive relief. *See generally* Doc. 1. This suit names all the parties from the state court litigation and also Oscar Rodriguez.[3] *Id*. at 1-2. UFCC seeks a binding

---

[1] The Rodriguez Defendants filed their reply and accompanying exhibits as one document rather than conforming to this District's practice of filing exhibits separately.

[2] The amended complaint cites Jeremiah Rocha's failure to control his speed and that he was following too closely to the vehicle as the causes of the crash. Doc. 20 at 6. UFCC reports that a tire blew on the Rodriguez Defendants' car and that Jeremiah Rocha could not stop his vehicle in time to avoid the collision. Doc. 17 at 1-2.

[3] UFCC's complaint provides no information regarding Oscar Rodriguez other than to say he is a resident of New Mexico. Doc. 1 at 2. Similarly, although counsel answered UFCC's complaint on

decision that the limits of available insurance coverage available to the state court plaintiffs is capped at $50,000, which is the amount of liability coverage Hector Rocha apparently purchased to insure his commercial vehicle. *Id.* at 7-8. The state court plaintiffs—Aceves-Lopez and Youngers—contend that more coverage is available. In their view, both federal and state regulations required Hector Rocha to carry at least $750,000 in commercial liability coverage. They assert that that UFCC failed to apprise him of this obligation, and that therefore, the applicable policy should be "reformed" to expand coverage from $50,000 to "meet the minimum financial responsibility requirements set forth" in N.M.A.C. 18.3.3.10(E)—i.e., $750,000. Doc. 20 at 19. The state court plaintiffs argue that the decision of whether to effectuate this contractual re-writing is best left to "the underlying state court suit to avoid duplicative efforts and possibly inconsistent outcomes." *Id*.

After these proceedings were initiated, the state court plaintiffs amended their pleading to include a claim for injunctive relief that is duplicative of the issues UFCC seeks to address in this forum. Doc. 20 at 18-19. Thereafter, UFCC sought an entry of default against Jeremiah Rocha and Hector Rocha after they did not answer UFCC's complaint for declaratory relief.[4] Doc 25. Aceves-Lopez, Youngers, and Oscar Rodriguez filed an objection to the entry of default against the

---

Oscar Rodriguez's behalf, his relationship to the persons involved in the collision at issue is not specified. *See generally* Doc. 9.

[4] The Federal Rules of Civil Procedure 55(a) and 55(b) "clearly set out a two-step process for default judgment in which the first step is the entry of default based on failure to appear or otherwise defend." *Nevada General Insurance Co. v. Anaya*, 326 F.R.D. 685, 690 (D.N.M. 2018) (internal quotations omitted). While entry of default is a necessary prerequisite to obtaining a default judgment, it is a ministerial act with legal effect and does not operate as a decision on the merits.

Rochas. Doc. 27. UFCC responded noting that it had only moved for entry of default and had not sought default judgment.[5] Doc. 30.

Against this factual and procedural background, the Court must determine whether to exercise jurisdiction and determine the limits available to the Rodriguez Defendants under the appliable UFCC commercial policy. For the reasons explained below, the Court concludes that the matter is better left addressed in the ongoing state court litigation and UFCC's complaint for declaratory relief should be dismissed.

## OPINION

### A. UFCC has standing to bring claims for declaratory relief under the Declaratory Judgment Act

"The Declaratory Judgment Act [('DJA or the Act')] provides the courts with jurisdiction over declaratory judgment actions when there is a justiciable case or controversy." *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300 (Fed. Cir. 2010). "The general purpose of [the DJA] is to provide an immediate forum for the adjudication of rights and obligations in actual controversy where such controversy may be settled in its entirety and with expediency and economy." *Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963). However, "[t]he statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). Accordingly, the party seeking a declaratory judgment must demonstrate that it has met the predicate case-or-controversy requirements of Article III standing. *Surefoot LC v. Sure Foot Corp.*,

---

[5] The Court sets aside the question of whether Aceves-Lopez, Youngers, and Rodriguez are legally entitled to challenge the entry of default on behalf of parties they do not represent and who they are suing in the state court case.

531 F.3d 1236, 1241 (10th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). To meet this obligation the plaintiff must satisfy three criteria:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*McCombs v. Delta Grp. Elecs., Inc.*, Case No. 1:22-CV-00662-MLG-KK, 2023 U.S. Dist. LEXIS 100632, at *6 (D.N.M. June 9, 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The party seeking declaratory relief shoulders the burden of establishing the existence of these elements. *W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1296 (10th Cir. 2023); *McCombs*, 2023 U.S. Dist. LEXIS 100632, at *6-7. "The facts supporting jurisdiction must be affirmatively alleged, and if challenged," the plaintiff must "persuad[e] this court by a preponderance of the evidence that the court has jurisdiction." *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

Courts addressing the question presented, including those in this district, have typically ruled that a party has standing under the DJA when seeking to resolve a coverage dispute. *United Fire & Cas. Co. v. Caskey Drywall N.M., LLC*, Case No. 1:17-cv-01108 KG/JHR, 2018 U.S. Dist. LEXIS 117982, at *8-12 (D.N.M. July 16, 2018) (holding that an insurance company had standing to bring a DJA action to determine its obligations regarding defense and indemnification of other parties); *see also Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 799 (11th Cir. 2011) ("FFIC denied coverage and Evercare has demanded it. That is a controversy and thus there is jurisdiction."); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998) ("[W]e have consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement."). This decisional

5

authority recognizes that insurance litigation frequently involves a real, and often imminent, threat of harm to the parties. The DJA provides a means for these "controversies to be settled before they ripen into violations of law or a breach of contractual duty." 10B Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751, at 429 (4th ed. 2016).

Here, the core dispute is between UFCC and the Rodriguez Defendants regarding the impact of state and federal regulations on the insurance policy held by Rocha's Septic Service. Doc. 1 at 8. UFCC contends that the benefits conferred by that policy are limited to $50,000 and exclude punitive damages. *Id*. By contrast, the Rodriguez Defendants seek reformation of that insurance contract to conform with state and federal regulations, which they assert mandate a minimum of $750,000 in coverage. Doc. 20 at 18-19; N.M.A.C. 18.3.3.10(E) (requiring "motor carriers of property with a gross vehicle weight rating of 10,000 pounds or less [to] maintain a combined single-limit public liability insurance policy of at least seven hundred and fifty thousand dollars ($750,000) per occurrence for bodily injury to or death of all persons injured or killed and property damage"). Thus, as UFCC's complaint alleges, the company will suffer financial harm if the substantive legal claims are not resolved in the company's favor. Moreover, there is an obvious controversy underlying this action—i.e., whether the operative insurance contract should be reformed in light of New Mexico law and regulations. For these reasons, the Court finds that the pending litigation addresses a harm that is definite, concrete, and bears directly on the legal relations of the parties in this matter. UFCC has standing to pursue its request for declaratory judgment in federal court.

**B.      Application of the *Mhoon* factors to the instant dispute weighs against the exercise of jurisdiction**

Having determined that the plaintiff has standing, the Court must still decide whether to exercise jurisdiction over the matter. The DJA provides that a district court "*may* declare the rights

6

and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Congress's inclusion of the modal verb "may" provides a "textual commitment to discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Thus, although the statutory text provides "the federal courts competence to make a declaration of rights," it does "not impose a duty to do so." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

District courts are afforded wide latitude "in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282. The United States Court of Appeals for the Tenth Circuit has adopted a five-factor balancing test to serve as a guide for district courts in determining whether to exercise the discretionary powers conferred by the DJA:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)). No one factor is weighted more heavily than another. *See Farm Bureau Prop. & Cas. Ins. Co. v. Gomez*, Case No. 2:21-cv-00527-BRB-GJF, 2021 U.S. Dist. LEXIS 190708, at *10 (D.N.M. Oct. 4, 2021) ("[W]hile the *Mhoon* factors are a means of guiding the Court's analysis, [] they are not individually determinative." (internal brackets and citations omitted)). Rather, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."

7

*Wilton*, 515 U.S. at 287 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

    1.  <u>The first and second *Mhoon* factors: whether the declaratory action would settle the controversy and whether a decision would serve a useful purpose in clarifying the legal relations at issue</u>

The Court addresses the first two *Mhoon* factors in tandem—whether the declaratory action would settle the controversy and whether a decision would serve a useful purpose in clarifying the legal relations at issue. *See* 31 F.3d at 983. Consideration of these elements together makes sense given that "these two factors are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings." *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002). "Without some degree of similarity between the proceedings, a federal declaratory judgment will likely not settle the controversy between the parties, nor would it clarify all the legal relations at issue." *Id*. But while "the likelihood a declaratory judgment will resolve the immediate dispute between the parties may tip the scales in favor of exercising jurisdiction . . . the existence of outstanding claims in a parallel state court action may counsel a different conclusion." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012). Indeed, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The first two *Mhoon* factors address these considerations and "shed light on the overall question of whether the controversy would be better settled in state court." *City of Las Cruces*, 289 F.3d at 1187.

Examining the facts and the argument presented, the Court finds that the first two *Mhoon* factors weigh against exercising jurisdiction. The reasons supporting this conclusion are

straightforward. The operative state court complaint presents claims for declaratory relief identical to those UFCC brings in this case. The two matters are parallel, and with only one exception, the parties are the same. *See Brillhart*, 316 U.S. at 495. And while a decision from this Court determining the scope of available insurance coverage would clarify a single discrete legal issue, it would not fully resolve the Parties' dispute. Questions regarding liability, comparative fault, and damages would remain. Thus, exercising jurisdiction would not settle the underlying controversy and many of the substantive legal questions at issue in the state court litigation would be left unanswered (a point addressed in more detail below).

  2. The third *Mhoon* factor: whether the request for declaratory judgment is being utilized for procedural fencing or a race to res judicata

The third *Mhoon* factor weighs in favor of jurisdiction. UFCC filed this matter before it was a party to the state court proceedings and before a claim for declaratory relief lodged in that action. It was only after UFCC sought declaratory relief in this Court that the Rodriguez Defendants amended their pleading to incorporate UFCC as a defendant and to parrot the claim for declaratory relief sought in these proceedings. Thus, there is no indication that UFCC is engaging in procedural fencing or a race to res judicata, and by contrast, there is ample evidence that the Rodriguez Defendants took action to defeat federal jurisdiction.[6] *See Deer Creek Homeowners Ass'n*, 685 F.3d at 984 ("[W]hile accusations of procedural fencing typically involve questionable actions on the part of the party seeking a declaratory judgment[,] the analysis can also be used to examine the motives of state court plaintiffs." (internal citations omitted)).

  3. The fourth and fifth *Mhoon* factors: whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction and the more effective remedy available to the parties

---

[6] The Rodriguez Defendants' amended complaint was plainly filed to undermine UFCC's federal cause of action.

In evaluating the fourth *Mhoon*'s inquiry—whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction—the Court finds this factor weighs against exercising jurisdiction. *See* 31 F.3d at 983. This is because the state court is being asked to decide the precise question at issue here. Moreover, the underlying litigation will resolve concomitant questions of liability and damages. Perhaps most significantly, each of these legal inquiries will be resolved using a common factual predicate, and the district courts "generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989).

For similar reasons, the fifth and final *Mhoon* factor, which asks the Court to consider whether there is a better or more effective remedy available to the parties, militates against exercising jurisdiction. *See* 31 F.3d at 983.

To begin with, the Court notes that all of the pending claims for relief (in both this and state court action) are rooted in New Mexico law. *Bristol W. Ins. Co. v. Salas*, 469 F. Supp. 3d 1175, 1179 (D.N.M. 2020). There is no federal question at issue, and "[t]he state court has an interest in deciding this insurance-based contractual question and in shaping the doctrine within the state." *Id*. For this reason, a state court's determination of insurance coverage would be preferable to resolution by this forum. *Century Sur. Co. v. Roybal*, Civ. No. 1:11-cv-01107 BB/ACT, 2012 U.S. Dist. LEXIS 198337, at *10 (D.N.M. Aug. 23, 2012) ("[A] state court's determination of insurance coverage is typically preferable to the Federal Court's determination, particularly when there are no issues of federal law presented.") (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007)). As such, the state court provides a "better" means for all Parties to obtain a remedy and finality.

The state court proceeding also provides a means of conclusively and comprehensively resolving the dispute; all liability and damages questions will be resolved in the same forum in a single proceeding. *City of Las Cruces*, 289 F.3d at 1191 ("The state proceedings would produce a 'more comprehensive and cohesive' remedy, because the rights of all, including the parties to the federal action, would be decided."). By contrast, while the Court could resolve the lone question UFCC presents in its request for declaratory judgment, it could not craft an order that effectively addresses the Parties' conflicting interests and legal positions. "The best way to manage these issues holistically is before a single tribunal, not in a piecemeal manner that raises a discreet [sic] state law matter in federal court." *Bristol W. Ins. Co.*, 469 F. Supp. 3d at 1179-80.

## CONCLUSION AND ORDER

Applying the *Mhoon* factors to these proceedings, the Court can identify no sound legal or factual basis to exercise jurisdiction over UFCC's request for declaratory judgment given that the same question is also being addressed in state court as part of a lawsuit involving several other related liability and damages questions. For this reason, the Defendants' motion to dismiss is granted. It is so ordered.

_____
MATTHEW L. GARCIA
UNITED STATES DISTRICT JUDGE